**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TERRY LYNN EVERETT,**

      **Plaintiff,**

v.                                                                  **Civil action no. 5:07cv135**
                                                                                  **(Judge Stamp)**

**JOYCE FRANCIS, Warden;**
**VALERIE RAPPOLD, A.W. Operations;**
**KAREN LAMBRIGHT, Health Service Administrator;**
**ELIZABETH BORAM, Assistant Health Service Administrator;**
**ELLEN MACE, Clinical Director**
**EDDIE ANDERSON, F.C.I. Physician;.**

      **Defendants.**

## REPORT AND RECOMMENDATION

On October 16, 2007, the plaintiff, initiated this case by filing a civil rights complaint pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. In addition, it appears that the plaintiff is also seeking relief under the Federal Tort Claim Act ("FTCA"). On October 19, 2007, the plaintiff was granted leave to proceed without prepayment of fees, and on November 1, 2007, the Court received the plaintiff's initial partial filing fee. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, <u>et</u> <u>seq</u>., and 28 U.S.C. §§ 1915(e) and 1915(A).

### I. The Complaint

In his complaint, the plaintiff alleges that he is a prior stroke victim, who has a history of hypertension. Before his incarceration at FCI Gilmer in April of 2006, the plaintiff alleges that he was on medication for his hypertension but was taken off that medication by defendant Anderson and placed

on cheaper, less effective medication. The plaintiff further alleges that when he first arrived at FCI Gilmer, an electrocardiogram ("EKG") showed T-wave abnormality, which indicated that his heart was not beating normally. Following two episodes of bardycardia, on March 8th and 9th, 2007, the plaintiff maintains that he was given a second EKG which showed sinus bardycardia and T-wave abnormality. Despite these results, the plaintiff maintains that medical staff did nothing. Thereafter, on March 27, 2007, the plaintiff indicates that he had another episode of bardycardia and had to be transported to Stonewall Jackson Memorial Hospital where another EKG was performed which showed a synocopal episode with blockage. The following day, a pacemaker was inserted to keep his heart beating properly. The plaintiff alleges that one of the doctors at Stonewall Jackson Memorial Hospital informed him that he should never have been taken off the medication he was taking when he entered FCI Gilmer. Moreover, the plaintiff claims that he was told that the medicine prescribed at FCI Gilmer was making his heart stop and had caused renal insufficiency. The day after his pacemaker was installed, the plaintiff indicates that he was returned to FCI Gilmer and put in the Segregation Housing Unit ("SHU") because the prison does not have a hospital ward or infirmary. The plaintiff maintains that in addition to having to change his own bandages, he had to wait days to receive the medication for his heart because at FCI Gilmer there is no full-time pharmacist and the limited staff that does exist lacks competence and training.

Finally, the plaintiff alleges that he suffers from severe glaucoma which the administration and health services refuses to treat.

## II. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether is it frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous,

malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325. However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," Id. at 327.

### III. Analysis

#### A. Defendants Francis, Rappold, Lambright, and Boram

Pursuant to Rule 8(a) of the Federal Rules if Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's's jurisdiction depends...(2) a short and plain statement of the claim **showing that the pleader is entitled to relief**, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required that the bald statement by the plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001)(citation and internal quotations omitted).

Moreover, liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the

part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzzo v. Good, 423 U.S. 362 (1976). Instead the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988).

In this case, the plaintiff does not allege any personal involvement on the part of defendants Francis, Rappold, Lambright, and Boram. Instead it appears that the plaintiff has named those defendants only in their official capacities as the Warden Assistant Warden of Operations, Health Services Administrator, and Assistant Health Service Administrator, respectively. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985)("Official-capacity suits...'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, remedy under Bivens is against federal officials in their individual capacities, not the federal government.

However, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors; performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. Nonetheless, the plaintiff cannot establish supervisory liability merely by showing that the

4

supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

Here, the plaintiff has not provided any evidence that these defendants tacitly authorized or were indifferent to an alleged violation of his constitutional rights. In fact, the plaintiff named Francis, Rappold, Lambright, and Boram as defendants in this action simply by listing their names in the caption of the case. However, in the body of the complaint, the plaintiff fails to allege, much less establish that any of these defendants participated or was otherwise involved in any violation of his constitutional rights. A bald statement that he is entitled to relief from a defendant without any factual support is insufficient. Moreover, to the extent the plaintiff may be asserting that any of these defendants were deliberately indifferent to his serious medical needs by denying his institutional grievances, that claim is without merit as this is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March w31, 2003). Accordingly, the plaintiff cannot maintain his claim against defendants Francis, Rappold, Lambright, and Boram. **B. Defendants Mace and Anderson**

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298

(1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[1]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905, 907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails

---

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, or lack thereof, must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beeorn, 896 F.2d 848, 851 (4th Cir. 1990); Norris v. Detrick, 918 F.Supp. 977, 984 (N.D.W.Va. 1996), aff'd, 108 F.3d 1374 (4th Cir. 1997).

Here, the plaintiff's claims against Mace and Anderson are sufficient to survive initial screening. Specifically, the plaintiff alleges that despite two EKGs that showed T-wave abnormality no corrective actions were taken, and despite two cardiac episode on March 8 and 9, 2007, no action was taken until a third episode on March 24, 2004, that required his transport to an outside hospital for installation of a pacemaker. In addition, the plaintiff alleges that upon his return from the hospital, he had to change his own bandages and had to wait days to receive his medication. Finally, the plaintiff alleges that he has severe glaucoma that has gone untreated. Accordingly, defendants Mace and Anderson should be made to answer the complaint.

## C. **Federal Tort Claim Act**[2]

The Federal Tort Claims Act (FTCA) is a comprehensive legislative scheme by which the United

---

[2] Although the plaintiff has not named the United Sates as a defendant, he attached his administrative tort claim as an exhibit to his complaint. Therefore, the undersigned concluded that the plaintiff is attempting to a raise a claim under the FTCA.

States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

The Supreme Court has held that "a person can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150 (1963). However, the FTCA does not create a new cause of action. Medina v. United States. 259 F.3d 220, 223 (4th Cir. 2001). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

Under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a

claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[3] There is nothing in the plaintiff's complaint which reveals he has met the requirements of W.Va. Code §55-7B-6.[4] Thus, the undersigned recommends that his FTCA be dismissed.

## VI. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that:

(1) the plaintiff's allegations against Joyce Francis, Valorie Rappold, Karen Lambright and Elizabeth Boram be **DISMISSED WITH PREJUDICE**, and said defendants be terminated from this case;

(2) the plaintiff's claim under the FTCA be **DISMISSED WITHOUT PREJUDICE** for failure to comply with W.Va.Code § 55-7B-6; and

(3) the plaintiff's claims against Ellen Mace and Eddie Anderson proceed, and that those defendants be **SERVED** with a copy of the summons and complaint through the United States Marshall Service. In addition, a copy of the summons and complaint should be served upon the United States

---

[3]In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury. The Court found that there was no conflict between the state pre-filing requirements and the pre-filing requirements of the FTCA. Stanley, 329 F.supp. 2d at 808-09. "[t]here is nothing to prevent a plaintiff from complying with both requirements." Id. at 809.

[4]In fact, the plaintiff requested that the requirements of W.Va. Code § 55-7B-6 be waived. That motion was denied.

through the United States Attorney for the Northern District of West Virginia and the Attorney General of the United States in Washington, D.C.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Dated: July 24, 2008

    /s/   James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE