# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


**TERRY LYNN EVERETT,**

      **Plaintiff,**


**v.**                                    **CIVIL ACTION NO. 5:07cv135**
                                                       **(Judge Stamp)**

**JOYCE FRANCIS, Warden.**
**VALORIE RAPPOLD, A.W. Operations,**
**ELIZABETH BORAM, Assistant Health Services Administrator,**
**ELLEN MACE, Clinical Director,**
**EDDIE ANDERSON, F.C.I. Physician,**

      **Defendants.**


## REPORT AND RECOMMENDATION


### I.  Procedural History

The pro se plaintiff initiated this case on October 16, 2007, by filing a civil rights complaint against the above-named defendants.  On October, 19, 2007,  the plaintiff was granted permission to proceed as a pauper.  The plaintiff paid his initial partial filing fee on December 11, 2007.

On July 24, 2008, the undersigned conducted a preliminary review of the file and issued a Report and Recommendation which recommended that defendants Francis, Rappold, Lambright, and Boram be dismissed because the plaintiff failed to allege any personal involvement on their part and had not alleged any supervisory liability.  However, the undersigned found that the plaintiff's Eighth Amendment claims against defendants Mace and Anderson were sufficient to survive initial screening.  Accordingly, the undersigned recommended that service of process issue against those two defendants.

On September 16, 2009, the District Court adopted the undersigned's Report and Recommendation and dismissed the plaintiff's claims for damages against defendants Francis, Rappold, Lambright, and Boram. In addition, the District Court adopted the undersigned's recommendation that the plaintiff's claims against defendants Mace and Anderson proceed. Finally, the District Court found that the claims for injunctive relief against defendants Francis, Rappold, Lambright and Boram were not barred by official capacity. Upon entry of the Court's Memorandum Opinion and Order, summonses were issued against all of the defendants. On January 15, 2010, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. On January 20, 2010, a Roseboro Notice was issued, and on February 24, 21010, the plaintiff filed a response.

## II. The Complaint

The plaintiff is a federal inmate, who is currently incarcerated at FCI Cumberland in Maryland. However, his complaint concerns his incarceration at FCI Gilmer located in Glenville, West Virginia. In his complaint, the plaintiff alleges that he is a prior stroke victim, who has a history of hypertension. Before his incarceration at FCI Gilmer in April of 2006, the plaintiff alleges that he was on medication for his hypertension but was taken off that medication by defendant Anderson and placed on cheaper, less effective medication. The plaintiff further alleges that when he first arrived at FCI Gilmer, an electrocardiogram ("EKG") showed T-wave abnormality, which indicated that his heart was not beating normally. Following two episodes of bardycardia, on March 8th and 9th, 2007, the plaintiff maintains that he was given a second EKG which showed sinus bardycardia and T-wave abnormality. Despite these results, the plaintiff maintains that medical staff did nothing. Thereafter, on March 27, 2007, the plaintiff indicates that he had another episode of bardycardia and had to be transported to Stonewall Jackson Memorial Hospital where another EKG was performed which showed a synocopal episode with blockage.

The following day, a pacemaker was inserted to keep his heart beating properly. The plaintiff alleges that one of the doctors at Stonewall Jackson Memorial Hospital informed him that he should never have been taken off the medication he was taking when he entered FCI Gilmer. Moreover, the plaintiff claims that he was told that the medicine prescribed at FCI Gilmer was making his heart stop and had caused renal insufficiency. The day after his pacemaker was installed, the plaintiff indicates that he was returned to FCI Gilmer and put in the Segregation Housing Unit ("SHU") because the prison does not have a hospital ward or infirmary. The plaintiff maintains that in addition to having to change his own bandages, he had to wait days to receive the medication for his heart because at FCI Gilmer there is no full-time pharmacist and the limited staff that does exist lacks competence and training. Finally, the plaintiff alleges that he suffers from severe glaucoma which the administration and health services refuses to treat.

For relief, the plaintiff seeks $3,000,000.00 in compensator damages, and unspecified amount in punitive damages, and injunctive relief.

### III. The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

A. All of the plaintiff's claims, other than his claim related to the treatment of his glaucoma, must be dismissed for failure to fully exhaust his administrative remedies;

B. The plaintiff cannot establish deliberate indifference on the part of defendants Mace and Anderson;

C. The defendants are entitled to qualified immunity, and;

D. The plaintiff's request for injunctive relief is moot.

### III. Standard of Review

## A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable."  Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim."

<u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir.2003) (citing <u>Dickson v.</u> <u>Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir.2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita</u>

Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

**IV. Analysis**

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted her administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

A review of the plaintiff's administrative history in SENTRY reveals that the plaintiff exhausted his administrative remedies regarding his request for treatment of glaucoma. (See Doc. 50-5, p.1). However, the plaintiff did not fully exhaust his administrative remedies regarding his claim that Dr. Anderson replaced his hypertension medication with a less costly, less effective medication that eventually caused his heart to stop, required him to have a pacemaker, and caused renal insufficiency. Additionally, the plaintiff did not exhaust his administrative remedies regarding his allegation that he was not properly treated after his passing out episodes or that he was placed

---

[1] Id.

in SHU after returning from the hospital where he had to wait days to receive his medication. (Doc. 50-5, p. 1).

Specifically, a review of the plaintiff's administrative remedy history reveals that on June 22, 2007, the plaintiff filed Remedy ID # 457025-F1[2], at the institutional level complaining that the change in his medication caused his heart to stop and caused him kidney damage. He also noted that he was placed in SHU because FCI Gilmer does not have a hospital ward. (Doc. 50-6, p. 1) The remedy was denied at the institutional level on July 6, 2007. (Doc. 50-6, p.2).

On July 16, 2007, the plaintiff appealed the denial by filing Remedy ID. No. 457025-R1 with the Regional Office. He only alleged that the change in his medication caused his heart to stop and caused him kidney damage. Missing from his appeal was any other allegation including the allegation about being placed in SHU. (Doc. 50-7, p. 1). Because the plaintiff did not raise any issue regarding his placement in SHU at this level, he was precluded from appealing that issue any further. See 28 C.F.R. § 542.15(b)(2); Tharp v. Justice, No. 5:05-cv-6, 2006 WL 1677884 (E.D. Tex. June 16, 2006)(copy attached as Exhibit 4) ("28 C.F.R. § 542.15(b)(2) says that an inmate may not raise in an appeal issues not raised in the lower level filings. Thus, to exhaust a claim properly, it must be raised in all three steps, the BP-9, BP-10, and BP-11 grievances. . ."). The remedy was denied on August 6, 2007. (Doc. 50-7, p.2).

On August 23, 2007, the plaintiff appealed the denial by filing Remedy ID No. 457025-

---

[2] Administrative remedy numbers identify at what level the remedy was filed and the number of times the remedy was filed at that level. A remedy filed at the institution level (BP-9) is identified by an F, at the Regional Office level (BP-10) an R, and at the Central Office level (BP-11) an A. An initial remedy filed at the institution level is assigned an F1. If the administrative remedy is rejected and re-filed at the institutional level, the re-filed remedy is identified as F2. The same system is used for all three levels. See Exhibit 3, ¶ 13.

A1with the Central Office level. (Doc. 50-8, p.1). The plaintiff noted the change in medication issue and also alleged he was placed in SHU upon his return from the hospital. Id. Because he did not raise the SHU issue at the next lower level, he was precluded from raising the issue at the final appeal level. 28 CFR § 542.15(b)(2). He also raised for the first time allegations about not being properly treated after passing out, EKG abnormalities, not enough medical personnel, and that this may not have occurred if the doctors at FCI Gilmer where specialists and not doctors of osteopathy. (Doc. 50-8, p.2). Because the plaintiff did not raise any of these allegations until the final appeal level, he was precluded from rasing the issues at the final appeal level as well. See 28 CFR § 542.15(b)(2). Prior to the Central Office making a decision on the appeal, the plaintiff filed this current action. The plaintiff was aware that he had not received a response to the Central Office appeal when he filed this Complaint. (Doc. 1-2 p. 1). In fact, he correctly notes that the Central Office has 40 days plus an additional 20 day extension to make a decision from the time the appeal is filed, which is the date it is logged into the index as received. ( Id. and 28 CFR § 542.18). In this case, the appeal was filed on August 23, 2007. (Doc. 50-9, p. 5). The Central Office had until October 22, 2007 to make their decision. Id. The plaintiff, however, filed this Complaint on October 16, 2007, prior to any decision by the Central Office.[3] Accordingly, the plaintiff had not fully exhausted his administrative remedies with respect to his complaint as it relates to substandard medication and resulting complications. Therefore, this claim should be dismissed. See White v. Francis, No. 2:07-cv-15, 2009 WL 302310 *5, Maxwell, J.(N.D.W.Va. Feb. 5, 2009) (claim

---

[3] The appeal was not decided by the Central Office until October 18, 2007, two days after Plaintiff filed this action. See Defendants Exhibit 3, Attachments C and D.

9

dismissed where plaintiff had filed at the institution and regional level, but claim had not been denied at the Central Office level when plaintiff filed his complaint; "plaintiff failed to fully exhaust his administrative remedies on this issue **before** filing his complaint with this Court.").[4]

## B.  Glaucoma

In his complaint, the plaintiff alleges that he has severe glaucoma that the administration and health services  at FCI Gilmer refused to treat even though treatment exists.  The plaintiff further alleges that he is blind in one eye and nearly blind in the other although it is not clear whether the plaintiff blames lack of care for his blindness.  The plaintiff also  maintains that he is at the mercy of other inmates because of his sight.[5]  Although the plaintiff does not specifically state a basis for his claim for damages, the undersigned has considered his complaint as raising an Eighth Amendment claim.

To state a claim under the Eighth Amendment, the plaintiff must show that the defendants acted with deliberate indifference to serious medical needs of a prisoner.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care,

---

[4]The undersigned notes that the plaintiff argues that exhaustion is complete upon the filing a timely and proper appeal to the Central Office. (Doc. 47, p. 13).  However, this is clearly not the case as established by Judge Maxwell's decision.  Furthermore, even if the plaintiff had waited to file his complaint until after he received the response to the Central Office appeal, he would only have exhausted his claim that the change in his medication caused his heart to stop and caused him kidney damage because that is the only claim that was included in each level of the grievance process.

[5]With respect to this statement, it unclear to the undersigned whether the plaintiff means that he must rely on assistance from other inmates or whether he means that he is subject to potential abuse from other inmates because of his vision.

unless exceptional circumstances are alleged.  <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[6]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss.  <u>Monmouth</u> 834 F.2d at 347.  Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment,  <u>Green v. Manning</u>, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus

---

[6] The following are examples of what does or does not constitute a serious injury.  A rotator cuff injury is not a serious medical condition.  <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition.  <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition.  <u>Browning v. Snead</u>, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities.  <u>Finley v. Trent</u>, 955 F. Supp. 642 (N.D. W.Va. 1997).

violating the Eighth Amendment. <u>Derrickson v. Keve</u>, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. <u>West v. Keve</u>, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. <u>Wilson</u>, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." <u>Id</u>. at 844.

In the instant case, the plaintiff alleges that he has severe glaucoma. However, the plaintiff's medical records do not support his claim. While confined to FCI Gilmer, the plaintiff was given three optometrist examinations. The plaintiff's first visit to an optometrist was on June 16, 2006, shortly after he arrived at FCI Gilmer. The optometrist noted that the plaintiff reported a history of glaucoma and a history of eye stroke. The optometrist's assessment was optic cupping and Central Retinal Artery Occlusion (CRAO)[7] in the right eye. The optometrist noted that no treatment was indicated at that time. (Doc. 50-1, p. 2). On January 19, 2007, a repeat optometrist evaluation was

---

[7]A CRAO is a blood clot or obstruction in blood flow to the eye. (Doc. 50-1, p.2).

done. The optometrist indicated that the plaintiff had Presbyopia, a history of CRAO in the right eye, and optic cupping. The optometrist again indicated that no treatment was needed. On February 13, 2009, the plaintiff had a third optometrist evaluation. The diagnosis given was astigmatism/presbyopia, blind in the right eye-probable macular hole, ocular hypertension/glaucoma suspect, and mild cellophane maculopathy in the left eye. Aside from being provided prescription glasses, no treatment was indicated. However, the optometrist did recommend that the plaintiff be monitored in six months.[8] Because it was not until this third optometrist appointment, that there is even a suggestion that the plaintiff suffers from glaucoma, there is certainly no evidence to support his contention that he suffers from severe glaucoma.

Furthermore, even if the plaintiff suffered from severe glaucoma, and the same amounts to a serious medical condition, thus satisfying the objective component of an Eighth Amendment claim, there is no evidence to support a finding that the medical staff at FCI Gilmer were deliberately indifferent to the condition. On the contrary, the plaintiff was seen and evaluated by contract optometrists on three occasions during a three year period, and none of them suggested that the plaintiff required any treatment for glaucoma. Furthermore, to the extent that the plaintiff may be alleging that his medical care at FCI Gilmer amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Finally, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care;

---

[8] By September 29, 2009, the plaintiff has been moved to FCI Cumberland, and therefore, any further followup through FCI Gilmer would have been impossible. (Doc. 26).

"no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," for his eyes he did receive care. Accordingly, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants have been deliberately indifferent to his vision needs, and accordingly, the plaintiff's complaint, as it relates to his exhausted 8th Amendment claim under Bivens should be dismissed for failure to state a claim.

## V.  Injunctive Relief

In addition to seeking $3,000,000 in monetary damages, the plaintiff also seeks relief in the form of unspecified injunctive and declaratory relief. The Supreme Court of the United States explained the relevant test for granting a preliminary injunction in Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374-76 (1008). A plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." See also Real Truth About Obama, Inc.v. Federal Election Comm'n, 575 F.3d 342 (4th Cir. 2009). However, in the instant case, the court need not address these four factors. The law is clear that an inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate-plaintiff's release from confinement or transfer to another facility. Ajaj v. Smith, 108 Fed. Appx. 743, 2004 WL 1663968 (4th Cir. July 22, 2004) (Where inmate seeking equitable relief from conditions at one facility was transferred from that facility to another institution, his claims were moot); Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1999) (Prisoner's claims for injunctive relief became moot because he was transferred to another facility; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) (Prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from

14

which he was transferred); <u>McKinnon v. Talladega County, Alabama</u>, 745 F.2d 1360, 1362 (11th Cir. 1984) (Inmate's transfer or release from jail mooted claims for declaratory and injunctive relief). Accordingly, because the plaintiff has been transferred from FCI Gilmer to FCI Cumberland, his claims for injunctive and declaratory relief are moot.

## VI. <u>Recommendation</u>

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. 41) be **GRANTED**, and the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim upon which relief can be granted in so far as it relates to his claims regarding "severe glaucoma", and be **DISMISSED WITHOUT PREJUDICE** as to his other claims for failure to exhaust his administrative remedies.

Any party may file within fourteen (14) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Frederick P. Stamp, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se*

plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet.

The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED:   March 22, 2010

 /s/ James E. Seibert                                    
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE